

NUMBER 13-09-00637-CV

# COURT OF APPEALS

# THIRTEENTH DISTRICT OF TEXAS

# CORPUS CHRISTI - EDINBURG

MICHAEL B. WANSEY, INDIVIDUALLY AND D/B/A
RIO GRANDE DEFENSIVE DRIVING SCHOOL,               Appellant,

v.

CHERYL D. HOLE,                                          Appellee.

**On appeal from the County Court at Law No. 2
of Hidalgo County, Texas.**

# MEMORANDUM OPINION

**Before Chief Justice Valdez and Justices Rodriguez and Benavides
Memorandum Opinion by Justice Rodriguez**

In this breach of contract and negligent hiring, training, and retention case, appellant Michael B. Wansey, individually and d/b/a Rio Grande Defensive Driving School, challenges the jury's verdict in favor of appellee Cheryl D. Hole. By eight

issues,[1] Wansey argues that: the evidence at trial was legally and factually insufficient to support the jury's finding that (1) Wansey negligently hired, trained, and retained a certain driving instructor, (2) any act or omission by Wansey or the driving instructor proximately caused Hole's injury, (3) Hole suffered any damages as a result of the negligent hiring, training, and retention, (4) Wansey breached the contract to provide driver instruction training to Hole's daughter, (5) Hole suffered damages as a result of that breach of contract, and (6) Wansey acted with malice or gross negligence such that Hole was entitled to exemplary damages; (7) because there was no breach of contract, Hole was not entitled to attorneys' fees; and (8) the exemplary damages award violates the Due Process Clause of the United States Constitution because it was sixty-six times the actual damages award. We affirm, in part, and reverse and render, in part.

## I. BACKGROUND

Hole's daughter was a student at the driving school owned by Wansey. One night, when Hole's husband arrived to pick up their daughter from class, he found her in the back of the school with her driving instructor in what Hole's husband alleged was a suspicious and compromising situation. The Holes withdrew their daughter from the driving school, demanded a full refund of the fee they paid for the driving class, and asked for an explanation of the driving instructor's conduct. Wansey sent the Holes a partial refund based on the number of hours of instruction that their daughter had already received at the school. Wansey also sent the Holes a letter attempting to explain the circumstances in which they found their daughter with the driving instructor.

---

[1] For purposes of our analysis, we have re-organized and re-numbered Wansey's appellate issues.

Hole filed suit against Wansey alleging claims of breach of contract, negligence in the hiring, supervision, training, or retention of his employees, and gross negligence.[2] Hole prayed for contract damages and actual and exemplary damages for her negligence claim. The case was tried to a jury, which returned a favorable verdict to Hole on both the breach of contract claim and the negligence claim. The jury awarded Hole $225.00 in contract damages and $5,000.00 in attorneys' fees related to that claim. For her negligence claim, the jury awarded Hole $225.00 in actual damages, found by clear and convincing evidence that the harm to Hole was the result of malice or gross negligence, and awarded Hole $15,000.00 in exemplary damages. Wansey filed a motion for new trial, which was overruled by operation of law. *See* TEX. R. CIV. P. 329b(c). This appeal followed.

## II. SUFFICIENCY OF THE EVIDENCE

By five issues, Wansey challenges the legal and factual sufficiency of the evidence supporting the jury's findings as to negligence, breach of contract, and actual and exemplary damages.

### A. Standard of Review

We may sustain a legal sufficiency challenge only when: (1) the record discloses a complete absence of evidence of a vital fact; (2) the court is barred by rules of law or of evidence from giving weight to the only evidence offered to prove a vital fact; (3) the evidence offered to prove a vital fact is no more than a mere scintilla; or (4) the evidence establishes conclusively the opposite of a vital fact. *King Ranch, Inc. v. Chapman*, 118

---

[2] Hole also sued Southern Cross Investments, Inc., Wansey's holding company, but it is not a party to this appeal.

3

S.W.3d 742, 751 (Tex. 2003). In determining whether there is legally sufficient evidence to support the finding under review, we must consider evidence favorable to the finding if a reasonable fact finder could and disregard evidence contrary to the finding unless a reasonable fact finder could not. *City of Keller v. Wilson*, 168 S.W.3d 802, 807, 827 (Tex. 2005).

In reviewing an appellant's factual sufficiency challenge to an adverse jury finding on which the other party had the burden of proof, as is the case here, we will consider, weigh, and examine all of the evidence in the record, both in support of and contrary to the finding. *See Dow Chem. Co. v. Francis*, 46 S.W.3d 237, 242 (Tex. 2001). We will set aside the district court's finding only if it is so contrary to the overwhelming weight of the evidence as to be clearly wrong and manifestly unjust. *Cain v. Bain*, 709 S.W.2d 175, 176 (Tex. 1986).

In the context of a jury trial, the sufficiency of the evidence is reviewed in light of the charge submitted if no objection is made to the charge. *Romero v. KPH Consolidation, Inc.*, 166 S.W.3d 212, 221 (Tex. 2005); *Wal-Mart Stores, Inc. v. Sturges*, 52 S.W.3d 711, 715 (Tex. 2001). Here, although Wansey expressed some concerns with the jury charge, it appears from the record that they were resolved in his favor in the charge given to the jury, and the trial court therefore never ruled on his objections, if any. Thus, we review the evidence under the law as set out in the jury charge. *See Romero*, 166 S.W.3d at 221.

### B. Negligence

By his first, second, and third issues, Wansey challenges the sufficiency of the evidence supporting the jury's findings on Hole's cause of action for negligent hiring,

training, supervision, and retention.

## 1. Jury Questions

The jury was questioned as follows regarding Wansey's liability for negligence: "Did the negligence if any of [Wansey] proximately cause the occurrence in question?" The charge also included the following definitions:

> **"NEGLIGENCE"** when used with respect to the conduct of [Wansey], means failure to use ordinary care, that is, failing to do what a driving school of ordinary prudence would have done under the same or similar circumstances or doing that which a driving school of ordinary prudence would not have done under the same or similar circumstances.

> **"ORDINARY CARE"** when used with respect to the conduct of [Wansey], means that degree of care that a driving school of ordinary prudence would use under the same or similar circumstances.

> **"PROXIMATE CAUSE,"** when used with respect to the conduct of [Wansey] means that cause which, in a natural and continuous sequence, produces an event, and without which cause such event would not have occurred. In order to be a proximate cause, the act or omission complained of must be such that a driving school using ordinary care would have foreseen that the event, or some similar event, might reasonably result therefrom. There may be more than one proximate cause of an event.

The jury was questioned as follows regarding negligence damages: "What sum of money, if any, if paid now in cash, would fairly and reasonably compensate Cheryl Hole for her damages, if any, that resulted from [the] occurrence in question."

## 2. The Evidence

At trial, Hole's husband testified in detail about the occurrence. He testified that when he arrived to pick up his daughter and she did not exit the driving school with the other students, he became suspicious. He went into the school, and a person inside the classroom pointed to a back exit door and indicated that he should look out there for his daughter. Hole's husband testified that when he tried to open the exit door, someone

5

was holding it shut, and when he managed to get outside, he found his daughter in a dark area in back of the driving school with her instructor. His daughter's books were on the ground, and she stepped quickly away from the instructor when Hole's husband came through the door. Hole's husband testified that they decided to withdraw their daughter from the class because they did not trust the safety of the situation at Wansey's driving school. He also testified that they enrolled their daughter in another, more expensive driving course and that she had to start the course from the beginning even though she was only four hours short of completing the course at Wansey's school.

Hole admitted into evidence two letters written to Wansey by her husband informing Wansey that they would be withdrawing their daughter, requesting an explanation of the incident, and demanding a full refund of the fee for the driving course; both letters stated that the Holes would possibly take legal action if Wansey did not comply. Hole also admitted into evidence two letters from Wansey to the Holes. The first letter, sent in response to the Holes' first letter, contained a one sentence reply: "Your letter of January 18 has been received and the contents noted." In his second letter to the Holes, in response to their second letter, Wansey informed the Holes that he would not be refunding their fee in full, would send a "pro-rata" refund for the portion of the course not taken, and would be cancelling their daughter's learner permit because she was withdrawn before making up her missed classes. Wansey then described the incident in question based on "information[] from persons who were there at the time":

> [O]ur instructor, having concluded his work, went outside for a welcome smoke.
>
> He held the door open because it has a strong hydraulic closer and if let go, will close itself, locking the individual out.

[Hole's daughter], at this point wandered out and started to ask the instructor about the Junior R.O.T.C., a subject in which [the instructor] has considerable knowledge.

She stood alone, a few feet away from him, and as he smoked, he answered her questions.

That's called exercising her 1st Amendment rights. Our instructor was politely answering her questions.

That's the scene you saw when you nearly knocked our instructor off his feet as he was holding the door open.

Wansey's second letter concluded, "Your threats are rejected . . . . Until you march up to our door with a writ in your hand, you don't give us orders." Wansey's "pro-rata" refund check to the Holes for $18.00 was admitted into evidence.

Hole presented evidence at trial that Wansey had employed two instructors in the past whose teaching licenses were revoked for inappropriate sexual conduct with students. Hole also introduced a memo written by Wansey's wife to the driving school's employees noting that two students had complained that an in-car instructor had made inappropriate sexual advances toward them. In the memo, Wansey's wife stated, "We are going on record with this memo to tell you not [to] say or do anything that might be deemed inappropriate in the slightest way. In other words, think before you open your mouth." Wansey admitted in the litigation, however, that his driving school has no written policies regarding student-teacher relations and that he does not perform background checks on his employees. Finally, Hole produced evidence that Wansey had repeatedly refused to take responsibility for the behavior of his instructors and students, stating, in particular, that "[we] are NOT responsible for what students do after classes, in particular if they take action under their own volition."

7

### 3. Liability

By his first issue, Wansey argues the evidence was legally and factually insufficient to support the jury's finding that Wansey negligently hired, trained, and retained the driving instructor involved in the incident with the Holes' daughter. We disagree. Hole presented evidence that the driving instructor engaged in inappropriate behavior with Hole's daughter and that Wansey had no policies or procedures in place to prohibit or govern such a situation. Hole also presented evidence that Wansey does not perform background checks on his employees. Although there was evidence that Wansey had informally warned employees against engaging students in an inappropriate way, Hole's evidence that Wansey had no official policies and procedures in place was sufficient to support the jury's verdict under the facts of this case. In other words, there was sufficient evidence that Wansey failed to act in a way that a driving school owner of ordinary prudence should act when operating a school for young students. Thus, viewing the evidence in the light most favorable to the verdict, we conclude there was more than a scintilla of evidence that Wansey failed to exercise ordinary care in the hiring, training, and retention of his driving instructors. *See Chapman*, 118 S.W.3d at 751. Further, considering evidence both favorable and contrary to the verdict, we cannot conclude that the jury's finding was so contrary to the overwhelming weight of the evidence as to be clearly wrong and manifestly unjust. *See Francis*, 46 S.W.3d at 242; *Cain*, 709 S.W.2d at 176. Wansey's first issue is overruled.

By his second issue, Wansey argues that the evidence was legally and factually insufficient to prove that his negligence was the proximate cause of any injury to Hole. Again, we disagree. The evidence at trial showed that Wansey's failure to create a safe

learning environment through the proper screening and control of his employees caused the Holes to withdraw their daughter from Wansey's driving school. The Holes were subsequently required to enroll their daughter in another school at additional cost to them and at which their daughter was required to restart her driver's education from the beginning. This result should have been foreseeable to Wansey because he had employed instructors in the past whose inappropriate behavior prompted student complaints and had even resulted in the revocation of instructors' licenses. The Holes' withdrawal of their daughter from Wansey's school was a natural and continuous consequence of Wansey's lax screening procedures and absent employment policies, which resulted in the employment of an instructor who engaged in inappropriate behavior with the Holes' daughter. Therefore, again viewing the evidence in the light most favorable to the verdict, we conclude there was more than a scintilla of evidence that Wansey's negligence was the proximate cause of the Hole's injury, i.e., the withdrawal of the Holes' daughter from Wansey's school and subsequent costs incurred by enrolling her in a different program. *See Chapman*, 118 S.W.3d at 751. And, again, we cannot conclude that the jury's finding on proximate cause was so contrary to the overwhelming weight of the evidence as to be clearly wrong and manifestly unjust. *See Francis*, 46 S.W.3d at 242; *Cain*, 709 S.W.2d at 176. Wansey's second issue is overruled.

**4. Damages**

By his third issue, Wansey argues that the evidence was legally and factually insufficient to show that Hole suffered any damages as a result of the incident. As previously discussed, Hole presented evidence that she and her husband decided to withdraw their daughter from Wansey's school because of the incident in question. As a

9

result, they had to pay for an additional driver's education course.  The evidence therefore supported the jury's negligence award of $225.00.   It represented the amount of the fee paid by the Holes to Wansey's school—in other words, the sum of money the Holes would not have lost but for Wansey's negligence.   Viewing the evidence in the light most favorable to the verdict, we conclude there was more than a scintilla of evidence supporting the jury's negligence damage award.   *See Chapman*, 118 S.W.3d at 751. And, after reviewing all of the evidence both in support of and contrary to the verdict, we cannot conclude that the jury's award was so contrary to the overwhelming weight of the evidence as to be clearly wrong and manifestly unjust.   *See Francis*, 46 S.W.3d at 242; *Cain*, 709 S.W.2d at 176.   Wansey's third issue is overruled.

### C.  Breach of Contract

By his fourth issue, Wansey argues that the evidence was legally and factually insufficient to support the jury's breach of contract finding.   We agree.

The jury was questioned as follows:   "Did [Wansey] breach the Student Enrollment Contract entered into between Rio Grande Defensive Driving School and Cheryl Hole?"[3]   The contract provided that the Holes' daughter would receive thirty-two hours of classroom instruction and twenty-one "behind-the-wheel" lessons.   The contract price was $186 for the course fees and $39 in administrative expenses, for a total of $225, which the Holes paid in full.   The contract included an attendance policy, a grading and progress policy, and rules of conduct for students.   The contract also included a notice from the Texas Education Agency, enumerating for parents the minimum requirements for teen driver education courses under the law.   Finally, the contract contained a refund

---

[3] The jury charge contained no further instructions on the breach of contract issue.

10

policy, which provided, in relevant part, as follows:

1.  Refund computations will be based on actual instruction received through the last date of attendance.

2.  The effective date of the termination for refund purposes will be the earliest of the following:   (a) the last day of attendance, if the student is terminated by the school; or (b) the date of receipt of written notice from the student.

    . . . .

5.  A full refund of all tuition and fees is due and refundable in each of the following cases:   (a) when an enrollee is not accepted by the school; (b) if the course of instruction is discontinued by the school at this location; or (c) if the student's enrollment was procured as a result of any misrepresentation in advertising, promotional materials of the school, or misrepresentation by the owner or representation of the school.

6.  Refunds shall be completed within 30 days after the effective date of termination.

Hole's theory at trial was that, because the Holes were forced to withdraw their daughter from Wansey's school "for cause," Wansey breached the contract by not providing the entire course of instruction.  In her petition, Hole alleged that Wansey breached the contract by "fail[ing] to properly supervise [his] employees and fail[ing] to provide a safe and proper environment for their students . . . ."  Hole also prayed to be "reimbursed in full" for the contract price.  But the contract here contained no provisions governing particular reasons for a student's withdrawal or covenanting or promising anything related to the driving school's employees.  Further, Hole alleged no facts and produced no evidence at trial that would have qualified her for a full refund under the contract.  Rather, the evidence at trial established that Wansey complied with the contract by sending the Holes a partial refund based on the instruction already received

11

by the Holes' daughter. This is all evidence no reasonable juror could have ignored. *See City of Keller*, 168 S.W.3d at 807, 827. We conclude the trial record is devoid of any evidence of a breach by Wansey of the student enrollment contract, and in light of this complete absence of evidence of a vital fact, the jury's verdict was not supported by legally sufficient evidence. *See Chapman*, 118 S.W.3d at 751. Wansey's fourth issue is sustained.[4]

By his fifth and seventh issues, respectively, Wansey argues that: the evidence was insufficient to show that Hole suffered damages as a result of the breach of contract; and if we were to determine that the evidence was insufficient to support the breach of contract finding, we must also reverse the attorneys' fees awarded to Hole on the basis of breach of contract. Having already determined that the evidence was legally insufficient to support the jury's breach of contract liability finding, we further conclude that Hole was not entitled to contract damages or attorneys' fees based on a breach of contract. Wansey's fifth and seventh issues are likewise sustained.

### III. MALICE OR GROSS NEGLIGENCE

By his sixth issue, Wansey argues that the evidence was legally and factually insufficient to prove that Wansey acted with malice or gross negligence. However, because there was no objection, we are guided in our analysis of Wansey's evidentiary issue by the standard and applicable law set out in the jury charge:

> Do you find by clear and convincing evidence that the harm to Cheryl Hole resulted from malice or gross negligence?

---

[4] Having concluded that the evidence was legally insufficient, we need not reach Wansey's argument that it is factually insufficient. *See* TEX. R. APP. P. 47.1.

12

"Clear and convincing evidence" means the measure or degree of proof that produces a firm belief or conviction of the truth of the allegations sought to be established.

"Malice" means specific intent by [Wansey] to cause substantial injury or harm to Cheryl Hole.

"Gross negligence" means more than momentary thoughtlessness, inadvertence, or error of judgment. It means such an entire want of care as to establish that the act or omission in question was the result of actual conscious indifference to the rights, welfare, or safety of the persons affected by it.

We will therefore determine whether Hole produced clear and convincing evidence that Wansey's conduct rose to the level of malice or gross negligence. *See Romero*, 166 S.W.3d at 221.

As noted above, Hole produced evidence that, even though Wansey had employed instructors in the past who were known to have inappropriate sexual conduct with young female students, he had no formal policy regarding instructor-student relations and did not perform background checks on his employees. Further, Hole produced evidence that Wansey did not believe it was his responsibility to prohibit or prevent the sort of incident that occurred between the Holes' daughter and her driving instructor. In fact, the evidence showed that Wansey repeatedly and adamantly refused to take such responsibility or admit that his employment practices were problematic. In particular, Wansey's letter to the Holes was hostile in tone and indicated an almost stubborn ignorance to the circumstances at his school. In short, there was ample evidence from which the jury could have found that Wansey's conduct was "more than momentary thoughtlessness, inadvertence, or error of judgment" and, instead, exhibited "an entire want of care" and "actual conscious indifference to the rights, welfare, or safety of the

13

persons affected" by Wansey's conduct. We thus conclude that there was sufficient evidence to produce in the minds of the jurors a firm belief that Wansey's conduct amounted to gross negligence. Wansey's sixth issue is overruled.

## IV. EXEMPLARY DAMAGES AND DUE PROCESS

By his eighth issue, Wansey argues that the jury's $15,000.00 exemplary damages award was unconstitutionally excessive and violated the Due Process Clause of the United States Constitution because it was sixty-six times the actual damages award. *See* U.S. CONST. amend. XIV. We disagree.

"The Due Process Clause 'prohibits a [s]tate from imposing a grossly excessive punishment on a tortfeasor.'" *Owens-Corning Fiberglass Corp. v. Malone*, 972 S.W.2d 35, 45 (Tex. 1998) (quoting *BMW of N. Am. v. Gore*, 517 U.S. 559, 562 (1996)). In reviewing exemplary damages, we are instructed to consider three guideposts: "(1) the degree of reprehensibility of the defendant's misconduct; (2) the disparity between the actual or potential harm suffered by the plaintiff and the punitive damages award; and (3) the difference between the punitive damages awarded by the jury and the civil penalties authorized or imposed in comparable cases." *State Farm Mut. Auto. Ins. Co. v. Campbell*, 538 U.S. 408, 418 (2003); *see Tony Gullo Motors I, Inc. v. Chapa*, 212 S.W.3d 299, 308-09 (Tex. 2006). The reprehensibility of the defendant's conduct is the "most important indicium of the reasonableness of a punitive damages award . . . ." *Campbell*, 538 U.S. at 419. In assessing reprehensibility, we determine whether: the plaintiff's health or safety was endangered, as opposed to his economic well-being; the tortious conduct evidenced a reckless disregard for or indifference to the health or safety of others; the plaintiff was financially vulnerable; the conduct was repeated; and the injury

14

was the result of malice, trickery, or deceit. *Id.* Further, "a reprehensibility analysis can . . . consider, to some extent, surrounding circumstances beyond the underlying tort." *Bennett v. Reynolds*, 315 S.W.3d 867, 875 (Tex. 2010).

With regard to the reprehensibility of Wansey's conduct, the evidence at trial, as discussed above, showed a conscious disregard by Wansey for the safety of his students. Despite having multiple past experiences with driving instructors who engaged in inappropriate conduct with students, Wansey still did not perform background checks on employees and had no official policy in place to govern the relationship between instructors and students. This same evidence demonstrates that Wansey's disregard produced repeated incidents of inappropriate contact between instructors and students. Wansey's flippant response to the Holes' inquiries is but further evidence of his indifference to the situation. The evidence at trial therefore showed that Wansey's conduct evidenced a reckless disregard for his students' safety and was repeated. *See Campbell*, 538 U.S. at 418; *see also Bennett*, 315 S.W.3d at 875 (allowing the reviewing court to consider circumstances occurring before the commission of the particular tort giving rise to the plaintiff's cause of action). Our analysis of the first guidepost weighs in favor of the punitive damages awarded to Hole.

As to the second guidepost, we note that courts have held that a single-digit ratio between the exemplary and actual damages would "more likely" comport with due process and that the exemplary damages award in this case was roughly sixty-six times the actual damages award. *See Campbell*, 538 U.S. at 425; *see, e.g.*, *Malone*, 972 S.W.2d at 46-47 (affirming an exemplary damages award of "slightly more than" two times the compensatory damages); *Borden, Inc. v. Guerra*, 860 S.W.2d 515, 528 (Tex.

15

App–Corpus Christi 1993, writ dism'd by agr.) (approving an exemplary award that was five times the amount of actual damages). However, we also recognize that there is no "bright-line ratio" between the actual damages suffered and punitive damages awarded that will mandate the affirming or reversal of an award. *See Campbell*, 538 U.S. at 424-25. Importantly, where "a particularly egregious act has resulted in only a small amount of economic damages," as is the case here, ratios greater than single digits will be considered constitutional. *Id.* at 425. Exemplary damages are intended to punish the wrongdoer and act as a deterrence to others. *Bennett*, 315 S.W.3d at 874. With that precept guiding our analysis, we cannot conclude, under the facts of this case, that the exemplary damages award was unreasonable and impermissibly disproportionate to the amount of harm suffered by Hole. *See Campbell*, 538 U.S. at 425-26.

The third and final guidepost requires the Court to examine the civil penalties authorized or imposed in comparable cases. *Id.* at 428. We note that, in a case like this involving a common law tort that does not readily compare to statutory causes of action, we are also guided by judicial decisions at the time of the misconduct. *See Malone*, 972 S.W.2d at 47. In particular, we look to whether the defendant had notice that substantial punitive damages were a potential consequence of its misconduct. *See id.* We conclude that Wansey had such notice. At trial, Hole admitted into evidence a letter written by Wansey to the State Bar of Texas, after the filing of Hole's lawsuit, complaining about Hole's husband, a local attorney. In his letter to the bar, Wansey implied that Hole filed her lawsuit in Hidalgo County, Texas, because it is known for "[s]ympathetic juries." From this, we conclude that Wansey was aware of the possibility of a significant damages award were a jury to find him liable for his conduct. This final guidepost therefore weighs

16

against excessiveness.

The jury's award of exemplary damages comported with federal due process requirements. Wansey's conduct was reprehensible; the amount of the exemplary damages was reasonably proportionate to the actual harm suffered by Hole; and Wansey had adequate notice of his vulnerability to such an award. *See Campbell*, 538 U.S. at 418. Wansey's eighth issue is overruled.

## V. CONCLUSION

We affirm the judgment of the trial court regarding the jury's findings of negligence, negligence damages, gross negligence, and exemplary damages. We reverse the judgment of the trial court regarding the jury's findings of breach of contract, contract damages, and attorneys' fees and render judgment dismissing Hole's breach of contract claim with prejudice.

NELDA V. RODRIGUEZ
Justice

Delivered and filed the
7th day of April, 2011.